**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | |
|---|---|
| **ASSURED GUARANTY MUNICIPAL CORP.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| - against - | : |
| | : |
| **UBS REAL ESTATE SECURITIES, INC.,** | : |
| | : |
| **Defendant.** | : |

-------------------------------------------------------------------x

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMEN⁻                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: 8-15-12              │
└─────────────────────────────────┘
```

**12 CV 1579 (HB)**

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

Before the Court is a motion to dismiss brought by Defendant UBS Real Estate Securities, Inc. ("UBS"). The Complaint, filed by Plaintiff Assured Guaranty Municipal Corp. ("Assured"), asserts several claims for breach of contract and declaratory judgment. For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

**Background**

Assured provides financial guaranty insurance for Residential Mortgage-Backed Securities ("RMBS"), which pool residential mortgage loans into a trust that issues certificates. Compl. ¶¶ 2–3. The certificates are sold to investors who are then entitled to a share, according to their investment, to a portion of the principal and interest payments generated by the loans. *Id.* ¶¶ 10, 16–18, 34. Assured promises to cover shortfalls in the event that cash flows from the loans are insufficient to pay investors their due. *Id.* at ¶¶ 10, 19.

In 2006 and 2007, Assured agreed in an insurance policy to provide financial guaranty insurance for three Certificates sponsored by UBS. *Id.* at ¶¶ 1, 35. These Certificates were subordinated to more senior Certificates, and thus would experience losses earlier. Kasner Decl. Ex. B, Prospectus Supp., at 75. The Prospectus ("Prospectus") and Prospectus Supplement (collectively, the "Offering Materials") disclosed certain risks associated with the loans underlying these Certificates, including for example, that a large number of loans were non-prime, often made to borrowers with blemished credit histories, and that the loans "were originated without regard to whether such loans would be acceptable for purchase by Fannie Mae or Freddie Mac," and "as a result, delinquencies and liquidation proceedings are more likely with

1

these loans than with loans that are originated in a more traditional manner." *Id.* at 26–28, 33. Each Certificate is governed by a separate Pooling and Servicing Agreement ("PSA"),[1] which allocates risks among the parties. They are governed by New York law, Kasner Decl. Ex. E, PSA § 11.03, and were entered into by UBS, the Depositor, the Master Servicer, the Custodian, the Trust Administrator, the Trustee, and the Credit Risk Manager. *Id.* at Title Page. Assured is not a party to the PSAs, but is named as a third-party beneficiary, along with the Net Interest Margin Security ("NIMS") Insurer. *Id.* at § 11.12.

Assured asserts three claims for breach of contract and two claims for declaratory judgment. The first breach of contract claim asserts that UBS pervasively and materially breached its representations and warranties as to the quality of the mortgage loans collateralizing the RMBS. The second claim is for breach of UBS' contractual obligations to repurchase those defective loans after Assured gave notice of the misrepresentations and demanded repurchase. The third claim asserts that UBS breached its obligation to provide confirmation that the loans had received certain ratings. According to Assured, of the loans reviewed as of the date of the Complaint, UBS' representations about the loan quality were false as to more than 90 percent of the mortgage loans reviewed by Assured in one securitization trust, more than 81 percent in another, and more than 95 percent in the third. Compl. ¶ 52. The fourth and fifth causes of action are for declaratory judgment. The fourth cause of action seeks a declaration as to UBS' continued failure to fulfill its contractual obligations to cure pervasive breaches. The fifth seeks a declaration that UBS is required to reimburse Assured. UBS seeks to dismiss each claim and asserts that Assured is not entitled to rescissory damages as to either the first or third causes of action as a matter of law.

### Legal Standard

According to the Supreme Court's most recent pronouncements, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The

---

[1] The language of the individual PSAs is largely identical.

requirement that the court accept all factual allegations as true, while still the law, does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

At the motion to dismiss stage, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.* 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted) (affirming district court's consideration of contracts referenced in the complaint on a motion to dismiss).

## Discussion

### I. Claim 1: Breach of the Mortgage Representations set Forth in the PSAs

The first claim is for breach of contract with respect to the mortgage representations in the PSAs for each transaction, which Assured states were false. Compl. at ¶ 72.[2] UBS argues that this claim is explicitly barred by two provisions of the PSAs, one limiting enforcement actions to those taken "for the common benefit of all Certificateholders" and the other stating that repurchase is the "sole remedy" for such breaches. Def.'s Mem. 14–16, 20.

### A. The No-Action Clauses Do Not Apply to Assured

Each PSA states that the Certificateholders are barred from instituting an enforcement action unless: (1) they "have given to the Trustee or Trust Administrator a written notice of a Master Servicer Event of Termination," or (2) they are "Holders of Certificates evidencing not less than 25% of the Voting Rights . . . [and] have made written request . . . to institute such action." Kasner Decl. Ex. E, PSA § 11.08. UBS argues that these provisions (the "No-Action Clauses") preclude Assured from asserting a cause of action for damages. Specifically, Assured is bound by the No-Action Clauses because "Assured's rights to recover payments made pursuant to its financial guaranty obligations are 'fully subrogated' to the rights of the holders of the Certificates it insures." Def.'s Mem. 16 (quoting Kasner Decl. Ex. E, PSA § 12.05); *see also AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 205 n.1 (Sup. Ct. 1991) (Baer, J.)

---

[2] For example, the debt-to-income ("DTI") ratios for many of the mortgage loans were miscalculated based on overstated borrower incomes or understated borrower debts. Further, UBS represented and warranted that the loans were underwritten in accordance with the applicable Underwriting Guidelines, when Assured asserts that they were not. Compl. ¶ 72.

(stating that insurer "stands in the shoes of the bondholders" for the purpose of seeking access to trustee's privileged communications with counsel). A recent case interpreting the same certificates concluded that "Assured's recovery of insurance payments is governed solely by its rights of subrogation." Def.'s Mem. 17 (citing *Wells Fargo Bank, N.A. v. ESM Fund I,LP*, 785 F. Supp. 2d 188, 196–97 (S.D.N.Y. 2011)).

Assured's view that the No-Action Clauses curtail its enforcement rights only in the situation where Assured seeks payment of claims of trust distributions (as opposed to compensation based on a violation of the PSA's terms) is persuasive. Not only are such clauses "strictly construed," *see Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992), but the language in the clause that subrogates Assured's rights to those of the Certificateholders is clear. It only operates in the specific situation in which the Certificate Insurer seeks "principal and interest from the Trust Fund." Kasner Decl. Ex. E, PSA § 12.05 ("[T]o the extent the Certificate Insurer makes payments, directly or indirectly, on account of principal of or interest on any Insured Certificate to the Holder of such Certificate, the Certificate Insurer will be fully subrogated to the rights of such Holder to receive such principal and interest from the Trust Fund.").

*Wells Fargo*, 785 F. Supp. 2d at 196-97, is distinguishable because that case involved Assured's claim "against a trust for amounts paid on insurance claims." Pl.'s Opp. 13 n.7. Similarly, although UBS relies on the decision in *Walnut Place LLC v. Countrywide Home Loans, Inc.*, 35 Misc. 3d 1207 (N.Y. Sup. Ct. 2012), *aff'd* 96 A.D.3d 684 (N.Y. 1st Dept. 2012), that case involved the construction of no-action clauses limiting the actions of certificateholders in a suit by *certificateholders* (as opposed to the certificate insurer). Although Assured's rights are subrogated to the Certificateholders and Assured "stands in their shoes" for purposes of payment of claims or trust distributions, Assured has the same rights as any party to the PSAs for purposes of this breach of contract suit alleging a violation of the terms of the PSAs.[3] Kasner Decl. Ex. E, PSA § 11.12 (stating that Assured is a third-party beneficiary with rights "to the same extent as if it were a party hereto, and shall have the right to enforce the provisions of this Agreement").

---

[3] UBS also argues that the purpose of the No-Action Clauses would be undermined if Assured's action proceeds. According to UBS, the Clauses protect against injuries due to the exercise of poor judgment by a single trust beneficiary. Def.'s Mem. 17. Assured responds that this argument is "absurd" since UBS' breaches have caused injury. Pl.'s Opp. 13.

**B. The "Sole Remedy" Clause May Not Apply to Assured**

The PSAs state: "It is understood and agreed that the obligation under this Agreement of [UBS] to repurchase . . . any Mortgage Loan as to which a breach has occurred . . . shall constitute the sole remedies against [UBS] respecting such matters available to Certificateholders and the Master Servicer, the NIMS Insurer, the Depositor, the Trust Administrator or the Trustee on their behalf." *Id.* at § 2.03. UBS argues that because this clause (the "Sole Remedy Clause") limits the remedies available to the original parties to the PSAs, it limits Assured as a third-party beneficiary. While it is true that a third-party beneficiary generally has no greater rights to enforce a contract than parties to the contract, *see BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993), here, the Sole Remedy Clause does not appear to apply to Assured, but even if the clause is ambiguous, the best movant can hope for is that it survives this motion to dismiss and at this stage of the litigation it will. *See Zuckerwise v. Sorceron Inc.*, 735 N.Y.S.2d 100, 102 (1st Dep't 2001) ("[A]t the very least, the contract is ambiguous and cannot be construed as a matter of law on the instant motion to dismiss."). Although UBS states that the clause limits all the original parties to the Contract, it omits the Custodian and the Credit Risk Manager, and specifically includes the non-party Certificateholders and the other third-party beneficiary, the NIMS Insurer.[4] Under the principal of *expressio unius est exclusio alterius*, it is not unreasonable to presume that these sophisticated parties left off the certificate insurer on purpose when cataloguing those to whom the Sole Remedy Clause was to apply. *See IBM Poughkeepsie Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F. Supp. 769, 773 n.19 (S.D.N.Y. 1984) ("[W]hen certain persons or categories are specified in a contract, an intention to exclude all others may be inferred."). Assured is mentioned multiple times throughout this section, including in the lines immediately preceding and following the Sole Remedy Clause. Thus while in general third-party beneficiaries are limited to enforcement measures permitted to parties, it is a plausible reading of this contract that Assured might have some other remedies. *See TufAmerica, Inc. v. Orchard Enters., Inc.*, No. 11 Civ. 1816, 2011 WL 4946663, at *3 (S.D.N.Y. Oct. 14, 2011) ("[A] motion to dismiss should not be granted where the contract

---

[4] The cases cited by UBS are distinguishable. In *MASTR Asset Backed Securities Trust 2006-HE3 ex rel. U.S. Bank Nat'l Ass'n*, No. Civ. 11-2542, 2012 WL 539374, at *5 (D. Minn. Feb. 16, 2012) the plaintiff was not left off a list of parties to whom the sole remedy clause applied. In *M & I Bank, FSB v. Coughlin*, CV 09-2282, 2012 WL 602365, at *5 (D. Riz. Feb. 24, 2012), there was no sole remedy clause before the court.

leaves doubt as to the parties' intent.") (internal citation and quotation marks omitted). Defendant's motion to dismiss as to the first claim is denied.

## II. Claim 2: Breach of Repurchase Obligations Set Forth in the PSAs is Dismissed

The second claim is for breach of contract with respect to the PSAs' repurchase obligations. Compl. ¶ 80. The PSAs state: "Upon discovery . . . by . . . [Assured] . . . of a breach of a representation or warranty made by [UBS] . . . [Assured] shall give prompt notice thereof to . . . the Trustee.  Upon receiving notice of a breach, the Trustee shall in turn notify . . . [UBS] of such breach.  The Trustee shall enforce the obligations of [UBS] . . . to correct or cure any such breach of a representation or warranty . . . and if [UBS] fails to correct or cure the defect . . . the Trustee shall enforce [UBS'] obligations." Kasner Decl. Ex. E, PSA § 2.03. UBS argues that this clause clearly limits the right to enforce the repurchase obligation to the Trustee.

Assured responds that language in the provision that gives it third-party beneficiary status permits it to enforce the repurchase obligations. "Under New York law, contracting parties may simultaneously elect to confer a benefit or right upon a third party and to limit that right, including by limiting the third party's enforcement powers." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 410 (S.D.N.Y. 2011).  Here, although Assured has the same general rights as parties to the PSAs, this section explicitly states that Assured may give notice to the Trustee so that the Trustee can enforce the repurchase obligations.  In a case considering nearly identical language, *CIFG Assurance North America, Inc. v. Goldman, Sachs & Co.* (*CIFG II*), the court concluded that the repurchase provision did not confer on the certificate insurer the direct right to enforce the repurchase provision and rejected the plaintiff's argument that as a third-party beneficiary, plaintiff had a general enforcement right. No. 652286, 2012 WL 1562718 (N.Y. Sup. Ct. May 1, 2012).[5] Assured is plainly included as an entity who can give notice to the Trustee, not an entity who can enforce the repurchase obligation.[6] *See id.* ("It does not confer

---

[5] UBS also argues that the second claim is barred by the No-Action Clauses and that it cannot be required to repurchase liquidated loans (loans that are more than 180 days delinquent) because the PSAs explicitly set the repurchase price for such loans at zero. I need not consider these alternative bases for dismissal.

[6] The PSAs § 2.03 provide reimbursement to Assured "for any expenses reasonably incurred. . . in respect of enforcing the remedies for such breach by [UBS]." This suggests that Assured has the right to enforce the repurchase obligations. Pl.'s Opp. 10. However, a different provision of the PSAs requires Assured to provide "[r]easonable security or indemnity satisfactory to [the Trustee]" in order for the Trustee to comply with Assured's requests to "preserve and enforce" its rights under the PSAs. Def.'s Reply 5 n.4. The expenses "contemplated by section 2.03 would arise from such an indemnification obligation, not as a result of Assured's direct enforcement of the R&W Remedy." *Id.*

upon [the Certificate Insurer] any direct right to enforce [the Originator's] obligations. Rather, it provides that [the Certificate Insurer] give notice of the breach . . . [and] direct the Trustee to enforce [the] obligation to repurchase."). The claim for breach of the repurchase obligations is dismissed.

### III. Claim 3: Breach of the Commitment Letters

The third claim is for breach of contract with respect to UBS' obligations under the Commitment Letters, which provide that "it shall be a condition precedent to the issuance of the related Policy by Assured that Assured shall have received confirmation from Standard & Poor's and Moody's that the Insured Certificates would have been rated AAA and Aaa respectively, without regard to the issuance of the Policy." Compl. ¶ 88. Assured asserts that UBS procured these ratings by conveying "false and misleading data and information" concerning the loans underlying the securities. *Id.* at ¶ 90. UBS argues that (1) it only had to procure these AAA and Aaa ratings, (2) the argument that it procured false ratings fails as a matter of New York appellate law, and (3) Assured is collaterally estopped from advancing this argument. Def.'s Mem. 21–22.

### A. The Argument that UBS Merely had to Procure AAA and Aaa Ratings is Without Merit

UBS' first argument with respect to dismissing the third claim is that Assured fails to state a claim because Assured concedes that UBS did in fact obtain ratings of AAA and Aaa for the Certificates. Assured responds that because the complaint alleges that UBS procured the ratings by providing false and misleading information to the agencies, "[i]n effect, UBS secured shadow ratings for different securities from those for which Assured issued its policies, and never obtained the required shadow ratings for the Insured Certificates." Pl.'s Opp. 18. I agree.

### B. The Argument that UBS Procured False Ratings Does Not Fail as a Matter of New York Law

UBS also argues that the recent First Department case of *MBIA Insurance Co. v. Merrill Lynch*, 916 N.Y.S.2d 54, 55 (1st Dep't 2011) bars Assured's complaint. Here, the First Department found that the plaintiff's complaint failed to "state a cause of action for breach of the promise to provide AAA-rated securities since it is undisputed that defendants in fact provided securities with AAA ratings." *Id.* at 55. However, in *Merrill Lynch*, the plaintiff only alleged that the securities did not merit the ratings assigned to them, while here Assured asserts that UBS procured the false ratings by its provision of misleading information. *Compare id.* (evaluating a

7

complaint asserting that the securities "did not warrant their AAA-ratings"), *with* Compl. ¶ 90 (asserting that UBS "procured falsely inflated shadow ratings by conveying to Standard & Poor's Moody's false and misleading data and information concerning the mortgage loans in the related Transaction"). If Plaintiff's allegations are true and the Defendant actually contends that it was proper to procure the ratings regardless of the material provided it rivals much of the immorality to which we have all been privy in recent days. It presages a win at any price society, with more than a dollop of cupidity.

### C. Collateral Estoppel Does Not Bar This Claim

UBS argues that Assured's exact argument was rejected by the court in *CIFG Assurance North America, Inc. v. Assured Guaranty Corp. (CIFG I)*, No. 65190/10, 2011 WL 2535029 (N.Y. Sup. Ct. June 14, 2011), and so Assured is collaterally estopped from raising that argument here. In that case, Assured argued that it was not obligated to make payments on certain reinsurance policies because it was only required to provide payments on "investment grade" assets and although Standard & Poor's had rated the notes "investment grade," the notes "should have been rated below investment grade." *Id.* at *2, *4. The *CIFG I* court held that "there is no promise of credit quality in the Reinsurance Agreement, and the plain language guarantees *only* that the policies actually be rated investment grade. . . ." *Id.* at *6. The issue here is different, Assured squarely posits that UBS took an active role in securing false ratings. Collateral estoppel does not bar the third claim, and it survives this motion to dismiss.

### IV. Claim 4: Declaratory Judgment For Failure to Cure Breaches is Dismissed

The fourth claim seeks a declaratory judgment against UBS "with respect to its continuing failure to fulfill its contractual obligation to cure the pervasive breaches of the Mortgage Representations in each Transaction." Compl. ¶ 96. UBS asserts that there is no justiciable case or controversy because UBS "does not contest that, under certain circumstances not present here, it has repurchase obligations," but rather, contests whether Assured's claims were "properly brought." Def.'s Mem. 24–25. Further, UBS argues that the PSAs' ninety-day period to cure a defective loan does not apply to its repurchase obligations. *Id.* at 25 n.14. UBS also asserts that this claim "should be dismissed as duplicative" of the second. *Id.* at 25.

Assured states that UBS' assertion that there is no actual controversy is "word play," arguing that UBS has "obligations with which it is failing to comply" under *these* circumstances. Pl.'s Opp. 23. Assured maintains that the declaratory judgment action is not duplicative because

8

the second claim "seeks damages for loans that are already confirmed to be in breach," while the fourth "seeks a declaration that UBS is required to repurchase breaching loans" for which notice has already been provided and those for which notice will be given in the future. *Id.* at 23–24.

The controlling issue, as with the second claim, is whether Assured is a proper entity and can bring this claim, whether § 2.03 permits Assured to enforce the R&W cure-or-repurchase remedy. As explained in Section II, the Trustee is the sole entity that can enforce this provision, and so this claim is barred on that basis as well.

### V. Claim 5: Declaratory Judgment Seeking Reimbursement is Dismissed

The fifth claim seeks a declaratory judgment that UBS is required to reimburse Assured: "(1) to the full extent of its exposure under each Policy, and (2) for any and all payments made as a result of UBS Real Estate's breaches of the Commitment Letters." Compl. ¶ 107. Assured maintains that UBS' breaches of the Commitment Letters create "a real and justiciable controversy as to the rights and legal relations of the parties under those Agreements." *Id.* UBS argues that this request is "duplicative" of Count 3. Def.'s Mem. 25 n.15. Assured does not directly respond to this point. *See* Pl.'s Opp. 23–24.

The Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's use of its declaratory jurisdiction is discretionary. *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (citing *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968)).

In support of its argument that Assured's requests for declaratory judgment should be dismissed as duplicative, UBS relies on *Apple Records, Inc. v. Capitol Records, Inc.*, which held that a "cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract." 529 N.Y.S.2d 279, 281 (1st Dep't 1988) (dismissing a declaratory judgment claim where determination of "parallel" breach of contract claims would "sufficiently guide the parties on their future performance of the contracts"); *see also Piven v. Wolf Haldenstein Adler Freeman & Herz LLP*, No. 08 Civ. 10578, 2010 WL 1257326, at *11 (S.D.N.Y. Mar. 12, 2010) (dismissing claim for declaratory relief because "Plaintiffs' rights [would] be determined pursuant to an adjudication of their [other] claims").

9

In the third claim, Assured seeks damages or "rescissory damages based on UBS' untrue and inaccurate representations and warranties." Compl. ¶¶ 93, 94. In the fifth claim, based on the same alleged misrepresentations, Assured seeks a judgment that UBS be "required to reimburse Assured: (1) to the full extent of its exposure under each Policy, and (2) for any and all payments made as a result" of the breaches. *Id.* ¶ 107.  The fifth claim is dismissed as duplicative of the third claim for breach of contract. *See Piven*, 2010 WL 1257326, at *11.

### VI. The Request for Denial of Rescissory Damages Is Denied as Premature

UBS argues that even if Assured can state a claim for breach of the PSAs or the Commitment Letters, Assured is not entitled to rescissory damages under either the first or third claims as a matter of law.  It would be premature to strike a remedy at the pleadings stage. *See Ambac Assurance Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464, 2009 WL 734073, at *2 (S.D.N.Y. Mar. 16, 2009) (denying defendant's request to strike rescissory damages sought by a financial guaranty insurer on the basis that it was premature); *cf. Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. 09 Civ. 3106, 2012 WL 2326068, at *10 (S.D.N.Y. June 20, 2012) (denying plaintiff's request for a ruling on the availability of rescissory damages at the motion for summary judgment stage because "[w]hether [plaintiff] may seek equitable remedies requires the Court to make factual determinations for which there is no support in the record at this stage"). This request is denied.

### Conclusion

I have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, UBS' motion to dismiss is GRANTED to the extent that the second, fourth and fifth claims are dismissed, and it is DENIED in all other respects. The Clerk of the Court is directed to close the motion and remove it from my docket.

SO ORDERED
August 15, 2012
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

10